No. 89-270

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

RAYMOND R. GARCIA and GAIL GARCIA,
husband and wife,

        Plaintiffs and Appellants,

-vs-

PAUL SCHELL and CAROLINE SCHELL,
husband and wife,

        Defendants and Respondents.

FILED
'89 OCT 24 AM 11 39
ED SMITH, CLERK
MONTANA SUPREME COURT

APPEAL FROM: District Court of the Nineteenth Judicial District,
In and for the County of Lincoln,
The Honorable Robert Keller, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Bruce McEvoy; Warden, Christiansen, Johnson & Berg,
        Kalispell, Montana

    For Respondent:

        Lawrence H. Sverdrup; Sverdrup & Barnes, Libby,
        Montana

Submitted on Briefs: Aug. 17, 1989

Decided: October 24, 1989

Filed:

_____
Clerk

Justice John C. Sheehy delivered the Opinion of the Court.


Plaintiffs, Raymond and Gail Garcia, filed suit in the District Court for the Nineteenth Judicial District, Lincoln County, to rescind their contract for deed with the defendants, Paul and Caroline Schell. The court entered judgment for the defendants awarding them possession of the real and personal property, or in the alternative, allowing plaintiffs to retain the property by updating and continuing payments.

Defendants were also awarded $2,500 in attorney fees plus costs. From this judgment, plaintiffs appeal. We affirm.

The issues are:

1. May a contract for the sale of a gas station operated in violation of state law at the time of contract, and subsequently, be rescinded for either lack of consideration or mutual mistake?

2. Did plaintiffs waive any right to rescission by their conduct?

Appellants, Raymond and Gail Garcia, entered into a contract for deed with respondents, Paul and Caroline Schell, on October 16, 1985. Garcias agreed to purchase Schells' self-service gas station, propane plant and 20-hookup RV park for $95,000.00. Garcias paid $30,000.00 down, and made 29 monthly payments of $698.49, the last payment being made on March 24, 1988.

On January 12, 1988, the "Eagle Conoco" business was inspected by the Libby Fire Chief and the Deputy State Fire Marshall. The Deputy State Fire Marshall again inspected the facility in March of 1988 and determined that several violations of the Uniform Fire Code existed. Most serious

was the violation of § 79-902(c), which states ". . . Class I or Class II liquids shall not be dispensed into the fuel tank of a motor vehicle from above ground tanks." Eagle Conoco's tanks are above ground.

The Deputy Fire Marshall listed the corrective steps necessary. Plaintiffs were given the option of installing underground tanks conforming to UFC and Environmental Protection Agency standards within three years, or to make the existing facility as safe as possible, with the understanding that any major renovation would require full conformance with the UFC and EPA standards. The first option's cost, changing to underground leak-resistant tanks, was determined to be approximately $26,700.00. The second option's cost was determined to be approximately $2,000.00.

Garcias failed to make their April 16, 1988 payment, or any subsequent payments. Schells notified the Garcias of their default on June 2, 1988. Garcias' attorney sent a letter on June 21, 1988, notifying Schells of their intent to rescind the contract for deed. On that same day, Gail Garcia obtained a loan from the First National Bank in Libby, encumbering the gas station with a Deed of Trust and Assignment of Contract for Deed. Garcias continued to use and occupy the premises up to the time of judgment, and sold some items of personal property released by Schells from the security of the contract.

On August 2, 1988, under the default provisions in the Contract for Deed, Schells would be entitled to the premises.

Garcias filed their complaint on July 15, 1988, to effect a rescission of the Contract for Deed. Garcias alleged lack of consideration, mutual mistake or, alternatively, actual or constructive fraud on the part of Schells. Garcias asked for $55,132.27 in compensatory damages, in addition to $50,000.00 in punitive damages.

## I

Did the District Court err in determining that neither the illegality of the operation nor the mutual mistake of the parties justified rescission of the contract for deed?

The District Court determined that, while failure of consideration and mutual mistake existed, neither were of such seriousness as to justify rescission.

Schells contended that the violations of the Uniform Fire Code provisions were not fatal to the contract's consideration. The facts bear this out. Garcias bargained for, amongst other things, a working, income-producing gas station. Eagle Conoco is such a station. Schells correctly point out that Garcias are not enjoined from operating the station due to the violations. Nor must they install underground tanks to continue operation. The cost of bringing the station up to the standards acceptable to the Montana Fire Marshall Bureau is approximately $2,000.00. While this expense constitutes a burden to the Garcias, it is not so great as to justify rescission of the contract for deed. This Court has stated that a breach which goes to only part of the consideration, is incidental and subordinate to the main purpose of the contract, and may be compensated in damages does not warrant a rescission of the contract. Johnson v. Meirs (1946), 118 Mont. 258, 164 P.2d 1012; Halcro v. Moon (1987), 226 Mont. 121, 733 P.2d 1305.

Garcias' contention that they may soon be forced to install underground tanks is not borne out by the record. The State Fire Marshall, Ray Blehm, testified that the UFC granted him discretion in allowing nonconforming facilities. He stated that his position was that above-ground tanks would be allowed to remain until replacement occurred through the operator's own volition. Nothing in the record shows that replacement may soon be required by the Environmental

Protection Agency, which has instituted new, stricter standards since the contract for deed was formed.

The District Court made its decision on the weight of this evidence, and we will not set aside findings of fact unless they are clearly erroneous. Rule 52(a), M.R.Civ.P.

## II

Did Garcias waive their right to rescission?

Schells argued, and the District Court concurred, that Garcias waived any right to rescission by their conduct.

Rescission of a contract may only be undertaken under certain circumstances.

> 28-2-1713. How rescission accomplished. Rescission, when not effected by consent, can be accomplished only by the use on the part of the party rescinding of reasonable diligence to comply with the following rules:
>
> (1) He must rescind promptly upon discovering the facts which entitle him to rescind . . ..
>
> (2) He must restore to the other party everything of value which he has received from him under the contract or must offer to restore the same, upon condition that such party shall do likewise, unless the latter is unable or positively refuses to do so.

Garcias' conduct following their notice of rescission was inconsistent with an intent to rescind. On the very day notice of rescission was sent to the Schells, Mrs. Garcia encumbered the property by executing an Assignment of the Contract for Deed and a Trust Indenture with the First National Bank of Libby. Further, Garcias continued in their use and occupancy of the premises from June of 1988 (when notice of rescission was given) until after the rendition of judgment in January, 1989. In addition, they disposed of a Jeep and a snowplow (items of personal property transferred

- 5 -

under the contract) after notice of rescission. None of these acts is consistent with a rescission.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices

- 6 -